IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DIANE JOHNSON, et al.,

    Plaintiffs,

       v.

CIVIL ACTION FILE
NO. 1:17-CV-2601-TWT

DEKALB COUNTY, GEORGIA, et al.,

    Defendants.

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants'
Motion for Summary Judgment [Doc. 42]. For the reasons set forth below, the
Defendants' Motion for Summary Judgment [Doc. 42] is GRANTED in part
and DENIED in part.

## I. Background

This is an action for false arrest and malicious prosecution. On July 11,
2015, the Plaintiffs Diane and Andre Johnson, a married couple, went to
Bigelow's Bar and Grill in DeKalb County to meet their friends, Charity and
Anthony Chambers.[1] At some point during the night, Ms. Chambers had a

---

[1]    Defs.' Statement of Material Facts ¶ 1. The Chambers are
plaintiffs in another action in front of this Court arising out of this incident.
*See* 1:17-CV-2591-TWT.

disagreement with Shayla Johnson, Mr. Johnson's sister.[2]  The Chambers then left the restaurant so that the dispute would not escalate, leaving before the Johnsons.[3]  They used a backdoor at the side of the restaurant to exit.[4]  Andre, Diane, and Shayla Johnson also left Bigelow's.[5]  They got into their car and began to exit the parking lot.[6]  However, as they were leaving the parking lot, they noticed that a police car had blocked the Chambers in their parking spot.[7]

The Defendant Officer Deron Fulton was working an extra job off-duty at Bigelow's that night.[8]  Officer Fulton was a police officer with the DeKalb County Police Department. While posted at the side door of Bigelow's, Officer Fulton observed the Chambers exit the restaurant.[9]  As the Chambers exited this side door, he overheard Ms. Chambers make a comment about Shayla Johnson to Mr. Chambers.[10]  Officer Fulton approached the Chambers to

---

[2]     *Id.* ¶ 2.

[3]     *Id.* ¶ 3; Pls.' Statement of Material Facts ¶ 6.

[4]     Defs.' Statement of Material Facts ¶ 4.

[5]     Pls.' Statement of Material Facts ¶ 1.

[6]     *Id.*

[7]     *Id.* ¶ 3.

[8]     Defs.' Statement of Material Facts ¶ 4.

[9]     *Id.* ¶¶ 8, 11.

[10]    *Id.* ¶¶ 4, 7.

2

investigate the situation, and eventually decided to block their car in a parking spot with his patrol car.[11] After seeing the Chambers' car stopped by Officer Fulton, the Plaintiffs stopped their car, and Ms. Johnson exited the car out of concern for the Chambers.[12] Mr. Johnson and Shayla Johnson stayed in the car.[13]

Ms. Johnson then approached Officer Fulton.[14] She identified herself as a friend of the Chambers, told him that they had just been in Bigelow's together, and asked what was happening.[15] Officer Fulton told Ms. Johnson that Mr. Chambers had identified himself as a police officer, and that he was going to place Mr. Chambers under arrest.[16] Ms. Johnson stated that she was going to record the arrest, returned to her car to retrieve her phone, and told Mr. Johnson what was occurring.[17] The Plaintiffs then exited their car and returned to the area of the Chambers' arrest.[18] Ms. Johnson attempted to film

---

[11] *Id.* ¶¶ 12, 14.

[12] Pls.' Statement of Material Facts ¶¶ 5-6.

[13] *Id.* ¶ 7.

[14] *Id.* ¶ 8.

[15] *Id.*

[16] *Id.* ¶¶ 9, 11.

[17] *Id.* ¶¶ 12-13.

[18] *Id.* ¶ 14.

3

Officer Fulton on her phone.[19] She asked him his name while she tried to film the encounter.[20] However, the Plaintiffs contend that Ms. Johnson did not interrupt Officer Fulton while he was speaking.[21] They also contend that Ms. Johnson was standing eight feet away from Officer Fulton, and that she did not interfere with his investigation of the Chambers.[22]

As Ms. Johnson tried to record Officer Fulton, he walked toward her.[23] He was visibly irritated by her questions and her filming.[24] She asked for his name again once he stood in front of her.[25] Officer Fulton refused to provide her with his name, and instead knocked the phone out of her hand.[26] After he knocked the phone out of her hand, Ms. Johnson stated "Is that what we're doing? We're knocking people's phones out of their hands for asking [for a]

---

[19]     *Id.* ¶¶ 15, 17. Ms. Johnson attempted to record this encounter, but "was not successful in doing so." *Id.* ¶ 18. Instead, she only captured two photographs of Officer Fulton. *Id.*

[20]     *Id.* ¶ 17.

[21]     *Id.*

[22]     *Id.* ¶¶ 19-20.

[23]     *Id.* ¶ 22.

[24]     *Id.* ¶ 23.

[25]     *Id.* ¶ 22.

[26]     *Id.* ¶ 25.

name?"[27] As Ms. Johnson picked her phone up off the ground, Officer Fulton ordered her to "get off his scene" and move to the front wall of Bigelow's.[28] While standing against the wall, Ms. Johnson again held her phone up to film, and asked Officer Fulton for his name.[29] Officer Fulton then said "that's it," and arrested Ms. Johnson.[30]

Mr. Johnson also exited the car.[31] He approached the scene and stood eight feet from Officer Fulton and the Chambers.[32] As he approached Officer Fulton, Mr. Johnson had his hands raised.[33] He asked Officer Fulton what was happening.[34] Officer Fulton approached Mr. Johnson, pushed him, and told him to turn around.[35] Mr. Johnson immediately turned and began to walk away.[36] As he began to walk away, he said to Officer Fulton that he had "no

---

[27] *Id.* ¶ 27.

[28] *Id.* ¶¶ 28-29.

[29] *Id.* ¶ 30.

[30] *Id.* ¶ 31.

[31] *Id.* ¶ 32.

[32] *Id.*

[33] *Id.* ¶ 33.

[34] *Id.* ¶ 34.

[35] *Id.* ¶ 35.

[36] *Id.* ¶ 36.

5

right to put your hands on me."[37] This statement upset Officer Fulton.[38] Mr. Johnson continued to walk away, and said "this is some bullshit."[39] Officer Fulton then told Mr. Johnson that he could not use that word.[40] Mr. Johnson responded by stating "I can say whatever I want to say. It's called freedom of speech, motherfucker."[41] He then continued to walk away.[42] At this point, the Plaintiffs contend that Mr. Johnson was twenty feet away from Officer Fulton.[43] Officer Fulton and Officer John Bowe then ran up behind Mr. Johnson and placed him in handcuffs.[44] Mr. Johnson was then placed under arrest.[45]

Officer Fulton later obtained arrest warrants against the Plaintiffs.[46] In

---

[37]     *Id.* ¶ 37.

[38]     *Id.*

[39]     *Id.* ¶ 40.

[40]     *Id.* ¶ 41.

[41]     *Id.* ¶ 42.

[42]     *Id.* ¶ 43.

[43]     *Id.* ¶ 44.

[44]     *Id.* Officer Bowe is also a Defendant in this action. Officer Bowe arrived on the scene around the time that Ms. Johnson was retrieving her phone from the ground below her car. *Id.* ¶ 58.

[45]     *Id.* ¶ 46. Mr. Johnson was arrested before Ms. Johnson. *Id.*

[46]     *Id.* ¶¶ 63-64.

the arrest warrant for Ms. Johnson, Officer Fulton charged her with misdemeanor obstruction in violation of O.C.G.A. § 16-10-24(a).[47] In his affidavit for this warrant, Officer Fulton swore that Ms. Johnson committed this offense "by continuously invading my private space, walking directly behind me while holding her cell phone near my head as I attempted to handcuff Mr. Andre Johnson and by ignoring my lawful order which instructed her to leave the scene and to record with her cell phone from a distance."[48] In the arrest warrant for Mr. Johnson, Officer Fulton charged him with disorderly conduct in violation of O.C.G.A. § 16-11-39.[49] In his affidavit seeking this warrant, Officer Fulton swore that Mr. Johnson acted "in a violent and tumultuous manner toward me . . . which placed me in reasonable fear of my safety by refusing to leave the scene and by stating in a loud and boisterous manner which caused nearby patrons to take notice 'man this some bullshit, Yall some bitches, It's called freedom of speech motherfuckers.'"[50] The charges against the Plaintiffs were dismissed by the DeKalb Solicitor General's Office.

On July 11, 2017, the Plaintiffs filed this action. They assert claims for false arrest, retaliatory arrest, and malicious prosecution under 42 U.S.C. §

---

[47] *See* [Doc. 46-5].

[48] *Id.*

[49] *See* [Doc. 46-6].

[50] *Id.*

1983, as well as state law claims for false imprisonment, false arrest, malicious prosecution, and battery, against Officer Fulton and Officer Bowe. They also assert a claim for municipal liability under § 1983 against DeKalb County. Finally, they seek a court order declaring that the DeKalb County's disorderly conduct ordinance is unconstitutional and enjoining its enforcement. The Defendants now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[51] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[52] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[53] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[54] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a

---

[51]    FED. R. CIV. P. 56(a).

[52]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[53]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[54]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

sufficient showing that the jury could reasonably find for that party."[55]

## III. Discussion

### A. Officers Fulton and Bowe

The Defendants first argue that Officer Fulton and Officer Bowe are not liable under 42 U.S.C. § 1983 because they are entitled to qualified immunity.[56] Qualified immunity exempts an officer from section 1983 liability under certain circumstances.[57] To be entitled to qualified immunity in the Eleventh Circuit, an officer must show that he was acting within the scope of his discretionary authority at the time of the alleged wrongful acts.[58] Once the officer has proved that he was within the scope of his discretionary authority, a plaintiff must show that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[59] In order to establish that a reasonable officer would have known of a right, a plaintiff must show development of law in a "concrete and factually defined context" such that a reasonable officer would know that his conduct violated

---

[55] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

[56] Defs.' Mot. for Summ. J., at 8-9.

[57] *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[58] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The parties do not seem to dispute that Officers Fulton and Bowe were acting within the scope of their discretionary authority.

[59] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

9

federal law.[60] Two questions are central to the qualified immunity defense. First, the Court must determine whether there was a violation of a constitutional right.[61] Second, the Court must then determine whether the right was clearly established.[62] The Court will address this analysis as to each alleged constitutional violation.

### 1. False Arrest

The Defendants first move for summary judgment as to the Plaintiffs' claims under 42 U.S.C. § 1983 for false arrest, retaliatory arrest, and malicious prosecution. In Count I, Diane Johnson alleges that Officer Fulton violated her Fourth Amendment rights by arresting her for obstruction without probable cause, seeking and obtaining a warrant for her arrest, and initiating a criminal prosecution against her.[63] Similarly, in Count II, Andre Johnson alleges that Officer Fulton and Officer Bowe violated his Fourth Amendment rights by arresting him for disorderly conduct without probable cause.[64] The Court addresses each of these in turn.

---

[60] *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000).

[61] *Hope v. Pelzer*, 536 U.S. 730, 736-42 (2002).

[62] *Lee*, 284 F.3d at 1194.

[63] Compl. ¶¶ 43-51.

[64] *Id.* ¶¶ 74-86.

T:\ORDERS\17\Johnson\17cv2601\msjtwt.docx

### i. Diane Johnson

First, the Defendants move for summary judgment as to Ms. Johnson's claim for false arrest. Ms. Johnson alleges that Officer Fulton arrested her for obstruction without probable cause in violation of the Fourth Amendment.[65] "An arrest made without probable cause violates the Fourth Amendment."[66] "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."[67] This standard is "practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances."[68] In a context such as this, state law defines the offense for which an officer may arrest an individual, while federal law governs whether probable cause existed for an arrest under that offense.[69]

---

[65] Initially, Ms. Johnson asserted claims against both Officer Fulton and Officer Bowe. However, the Plaintiffs now state that "[w]ith the benefit of a full record," they "recognize that Officer Bowe's role in this incident is limited to his arrest of Mr. Johnson," and they consequently do not oppose dismissal of Ms. Johnson's claims against Officer Bowe. *See* Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 6 n.2. Thus, the Court deems these claims to be abandoned.

[66] *Merenda v. Tabor*, 506 F. App'x 862, 865 (11th Cir. 2013) (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007)).

[67] *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002).

[68] *Skop v. City of Atlanta*, Ga, 485 F.3d 1130, 1137 (11th Cir. 2007).

[69] *See Devenpeck v. Alford*, 543 U.S. 146, 151-53 (2004).

11

Qualified immunity adds another layer to this analysis. "It is clearly established that an arrest made without probable cause violates the Fourth Amendment."[70] On the other hand, the existence of probable cause at the time of arrest is an absolute bar to constitutional challenges to the arrest.[71] "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity."[72] "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."[73]

The central issue is whether Officer Fulton had arguable probable cause to believe that Ms. Johnson committed the offense of obstruction of an officer.[74] "The standard for arguable probable cause is 'whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law.'"[75] This rule recognizes that it is "inevitable that

---

[70]     *Redd v. City of Enter.*, 140 F.3d 1378, 1382 (11th Cir. 1998).

[71]     *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

[72]     *Skop v. City of Atlanta, Ga*, 485 F.3d 1130, 1137 (11th Cir. 2007).

[73]     *Brown*, 608 F.3d at 734.

[74]     *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997).

[75]     *Gold*, 121 F.3d at 1445 (emphasis in original) (quoting *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994)).

12

law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and … in such cases those officials … should not be held personally liable."[76] Arguable probable cause is distinct from actual probable cause.[77] The existence of probable cause or arguable probable cause depends on the elements of the alleged crime and the circumstances of the case.[78] However, establishing arguable probable cause does not require an officer to prove every element of a crime.[79]

Ms. Johnson was arrested for violating Georgia's obstruction statute. O.C.G.A. § 16-10-24(a) provides that:

> a person who knowingly and willfully obstructs or hinders any law enforcement officer, prison guard, jailer, correctional officer, community supervision officer, county or Department of Juvenile Justice juvenile probation officer, probation officer serving pursuant to Article 6 of Chapter 8 of Title 42, or conservation ranger in the lawful discharge of his or her official duties shall be guilty of a misdemeanor.[80]

This statute's history helps explain its intended scope and explains inconsistencies in Georgia cases construing it.[81] In the past, the Georgia Court

---

[76] *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).

[77] *Gold*, 121 F.3d at 1445.

[78] *Brown*, 608 F.3d at 735.

[79] *Id.*

[80] O.C.G.A. § 16-10-24(a).

[81] *Harris v. State*, 314 Ga. App. 816, 819 (2012).

of Appeals "construed the misdemeanor obstruction statute so that violence—or its verbal equivalent—was an essential element of the crime."[82] However, "the statute was revised in 1986, and 'the offense of misdemeanor obstruction under existing OCGA § 16–10–24(a) no longer contains the element of violence as does the offense of felony obstruction under existing OCGA § 16–10–24(b).'"[83] The Court of Appeals "disapproved of" its older cases "to the extent that they implied that misdemeanor obstruction requires proof of 'forcible resistance' or 'threat of violence.'"[84] Thus, "[u]nder certain circumstances, words alone can constitute obstruction."[85]

The Court concludes that Officer Fulton lacked arguable probable cause to arrest Ms. Johnson for obstruction. The Defendants argue that Officer Fulton had arguable probable cause to arrest Ms. Johnson for misdemeanor obstruction because "she repeatedly asked Officer Fulton for his name and testified that she did not remember what Officer Fulton was doing when she made those repeated inquiries."[86] According to the Defendants, these repeated inquiries "interrupted (and thereby obstructed) his investigation," and that a

---

[82]     *Id.* at 819-20.

[83]     *Id.* at 820 (quoting *Stryker*, 297 Ga. App. at 495).

[84]     *Johnson v. State*, 330 Ga. App. 75, 77 (2014).

[85]     *Lebis v. State*, 302 Ga. 750, 761 (2017) (citing *Stryker v. State*, 297 Ga. App. 493, 495-96 (2009)).

[86]     Defs.' Mot. for Summ. J., at 12.

reasonable officer under the circumstances would believe probable cause existed to arrest her for obstruction.[87] However, the Defendants provide no case law supporting their argument. When construing the facts in Ms. Johnson's favor, a reasonable officer could not believe that probable cause existed to arrest her for obstruction. The circumstances under which speech alone can constitute obstruction are limited.[88] In such cases, "the defendant's words affirmatively interfered with the officers' actions."[89] For example, in those cases where obstruction convictions based upon speech were sustained, the defendants "instructed someone to remove evidence from a crime scene; refused to leave a scene and yelled so loudly so as to interfere with an officer's ability to conduct a witness interview; deliberately misled an officer about the defendant's identity; lied to officers about the whereabouts of suspects; and deliberately misled a responding officer about the defendant's role in a car wreck."[90] Ms. Johnson's conduct does not rise to that level.

For example, in *Lebis v. State*, the defendant was convicted of obstruction for yelling "very loudly" at officers to leave her husband alone as

---

[87]     *Id.* at 13.

[88]     *Johnson*, 330 Ga. App. at 78.

[89]     *Lebis*, 302 Ga. at 761.

[90]     *Id.* (citing *Harris v. State*, 314 Ga. App. 816, 820-21 (2012)).

15

they placed the husband under arrest.[91]  The Georgia Supreme Court reversed

her conviction, concluding that the evidence did not show that she

"intentionally hindered the arrest by her protestations" or that she "refused or

failed to comply with any directives from either officer at this time."[92]  The

court explained that "[t]he fact that Lebis was 'not assisting' with the arrest in

this case when she yelled at officers to leave Tremaine alone, without anything

more, did not rise to the level of obstruction."[93]  In contrast, in *Johnson v. State*,

the defendant's obstruction conviction was sustained where he was yelling

criticisms at officers executing a search, disobeyed an order by an officer to

leave the property, caused others near the scene to also start screaming,

refused to obey multiple subsequent orders, and generally prevented them

from continuing to investigate the scene.[94]

When construing the facts in Ms. Johnson's favor, her conduct does not

amount to misdemeanor obstruction under Georgia law. Ms. Johnson merely

asked for Officer Fulton's name and attempted to record the incident from a

distance. When asked to leave the immediate vicinity of the investigation, Ms.

Johnson complied. She stood against the wall of the restaurant, as Officer

---

[91]     *Lebis*, 302 Ga. at 751.

[92]     *Id.* at 761.

[93]     *Id.* at 761.

[94]     *Johnson v. State*, 330 Ga. App. 75, 75-76 (2014).

16

Fulton instructed her to do. She then continued to film him from the building's wall and asked again for his name. She did not interrupt Officer Fulton with these questions. This conduct did not impede Officer Fulton from investigating the incident, securing the safety of the scene, or engaging in his work. The fact that her questions may have annoyed him does not establish probable cause for obstruction.[95] The Defendants fail to explain how Ms. Johnson's conduct "obstructed" or "hindered" the officers' investigation of the events that night.[96] Moreover, her repeated inquiries into Officer Fulton's name are not nearly as disruptive as the screams by the defendant in *Lebis*, which were insufficient in that case to sustain an obstruction conviction.[97] Given this Georgia case law, no reasonable officer would believe that probable cause existed to arrest Ms. Johnson for obstruction. Eleventh Circuit precedent also supports such a conclusion.[98] Therefore, under Ms. Johnson's account of the facts, which the

---

[95] *See Skop v. City of Atlanta, Ga*, 485 F.3d 1130, 1138-39 (11th Cir. 2007).

[96] *See id.* at 1139 ("Had the circumstances been different—for example, had Brown been located at a busy intersection where Skop's inquiry impeded the officer's ability to direct other cars—this analysis might be different.").

[97] *Lebis*, 302 Ga. at 760-61.

[98] *See Reese v. Herbert*, 527 F.3d 1253, 1273-74 (11th Cir. 2008) (holding that officers lacked arguable probable cause to arrest plaintiff for obstruction where he arrived to the scene of a domestic violence incident ten minutes after suspect had been arrested, asked which officer was in charge, asked whether all of the police cars needed to remain at the scene, and maintained a calm demeanor); *Skop*, 485 F.3d at 1138-39 (concluding that

17

Court must accept at this stage, Officer Fulton arrested her without actual or arguable probable cause.[99] Thus, the first qualified immunity inquiry weighs in Ms. Johnson's favor.[100]

The second qualified immunity inquiry asks whether the constitutional violation was clearly established. In the context of false arrests, this inquiry is "straightforward."[101] Eleventh Circuit precedent clearly established at the time of Ms. Johnson's arrest that an arrest made without arguable probable cause violates the Fourth Amendment.[102] Qualified immunity protects police officers from false arrest suits, but "only up to the line defined by the arguable

---

officer lacked arguable probable cause to arrest for obstruction where a stranded motorist requested a police officer to move his patrol car during a severe thunderstorm).

[99]     *Skop*, 485 F.3d at 1143 ("Quite simply, under Skop's version of the arrest—the version we are obliged to credit—Brown did not possess actual or arguable probable cause to arrest her. If Skop's account of the arrest is true, Brown's actions were, as the Atlanta Police Department's disciplinary proceedings found, an abuse of his authority.").

[100]     Ms. Johnson also argues that she could not have obstructed Officer Fulton's "lawful discharge" of his "official duties" because his initial seizure of the Chambers was unlawful. *See* Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 12-13. "[F]or purposes of obstruction, an officer is not lawfully discharging his duties when he 'arrest[s] an individual without reasonable or probable cause.'" *Mitchell v. Parker*, 271 F. Supp. 3d 1364, 1378 (N.D. Ga. 2017) (quoting *Meadows v. State*, 303 Ga. App. 40, 42 (2010)). However, as explained in the Court's Opinion and Order in *Chambers v. DeKalb County*, Officer Fulton's initial seizure of the Chambers was lawful because he had reasonable suspicion to believe that a crime had occurred.

[101]     *Skop*, 485 F.3d at 1143.

[102]     *Id.*

18

probable cause standard."[103] "Where, as here, the resolution of disputed critical facts determines on which side of this line the officer's conduct fell, summary judgment is inappropriate."[104] Ms. Johnson has shown, when the facts are construed in her favor, that Officer Fulton lacked arguable probable cause to arrest her. Thus, Officer Fulton is not entitled to qualified immunity at the summary judgment phase because he violated clearly established law, and Ms. Johnson should "have her case heard by a jury."[105]

### ii. Andre Johnson

Similarly, the Defendants move for summary judgment as to Mr. Johnson's false arrest claim. Mr. Johnson alleges that the Defendants violated his Fourth Amendment rights by arresting him without probable cause. The Defendants claim that Officer Fulton and Officer Bowe had arguable probable cause to arrest Mr. Johnson for disorderly conduct, and thus they should be entitled to qualified immunity.[106] O.C.G.A. § 16-11-39 provides that:

(a) A person commits the offense of disorderly conduct when such person commits any of the following:

(1) Acts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health;

---

[103]    *Id.* at 1144.

[104]    *Id.*

[105]    *Id.* at 1144.

[106]    Defs.' Mot. for Summ. J., at 14-17.

19

(2) Acts in a violent or tumultuous manner toward another person whereby the property of such person is placed in danger of being damaged or destroyed;

(3) Without provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words"; or

(4) Without provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace.[107]

"States cannot apply criminal penalties to protected speech, and Georgia has accordingly tailored its disorderly conduct statute to punish only unprotected fighting words."[108] "In defining fighting words in the context of disorderly conduct and resisting arrest, Georgia courts recognize that a court 'must examine not only the words used but also the circumstances and context in which they were said.'"[109]

The Defendants argue that Mr. Johnson was arrested due to the officers' reasonable belief that Mr. Johnson's conduct violated the Georgia disorderly

---

[107]    O.C.G.A. § 16-11-39(a).

[108]    *Merenda v. Tabor*, 506 F. App'x 862, 865 (11th Cir. 2013).

[109]    *Id.* (quoting *Turner v. State*, 274 Ga. App. 731, 732 (2005)).

20

conduct statute. According to the Defendants, Mr. Johnson violated the Georgia disorderly conduct statute by using profanity, ignoring "explicit officer directives to leave the scene," yelling and cursing at the officers, calling their actions "bullshit," stating that he has "freedom of speech," and "belittling them in front of others by calling them 'motherfuckers.'"[110] The Defendants also argue that these words were coupled with his "aggressive posture" in front of a crowd of onlookers, and that the words "caused a scene and could have easily encouraged onlookers to act violently against the officers."[111] Consequently, according to the Defendants, Officer Fulton and Officer Bowe had a reasonable fear for their safety and a reasonable belief that this conduct could incite an immediate breach of the peace.[112]

However, Mr. Johnson provides a different version of the story. According to Mr. Johnson, he walked toward the officers, with his hands raised, to ask what was happening with the Chambers.[113] Mr. Johnson was about eight feet away from Officer Fulton and the Chambers.[114] Officer Fulton

---

[110]    Defs.' Mot. for Summ. J., at 14-16.

[111]    *Id.* at 16.

[112]    *Id.*

[113]    Pls.' Statement of Material Facts ¶¶ 32-34.

[114]    *Id.* ¶ 32.

approached Mr. Johnson, pushed him, and told him to turn around.[115] Mr. Johnson immediately walked away.[116] At this time, there was no crowd around them.[117] As he walked away, he said to Officer Fulton that he had "no right to put your hands on me," which upset Officer Fulton.[118] He continued to walk away, and said "this is some bullshit."[119] Officer Fulton told Mr. Johnson he could not use profanity, and Mr. Johnson replied by stating "I can say whatever I want to say. It's called freedom of speech, motherfucker."[120] At this point, Mr. Johnson was twenty feet away from Officer Fulton.[121] Officer Fulton and Officer Bowe then ran up behind him and placed him in handcuffs.[122] He was then arrested and placed in Officer Bowe's police car.[123] Mr. Johnson contends that he was not acting in an aggressive or erratic manner.[124]

---

[115]  *Id.* ¶ 35.

[116]  *Id.* ¶ 36.

[117]  *Id.* ¶ 60.

[118]  *Id.* ¶¶ 37-38.

[119]  *Id.* ¶ 40.

[120]  *Id.* ¶¶ 41-42.

[121]  *Id.* ¶ 44.

[122]  *Id.* ¶ 43.

[123]  *Id.* ¶¶ 46-47.

[124]  Pls.' Response to Defs.' Statement of Material Facts ¶¶ 25, 27-29.

Mr. Johnson argues that, when taking the facts in this light, arguable probable cause did not exist to arrest him for disorderly conduct. He argues that his conduct did not involve physical force, was not tumultuous, and could not give rise to a reasonable apprehension or fear of physical harm.[125] Instead, according to Mr. Johnson, he was arrested for verbally challenging Officer Fulton and using profane language, conduct which is protected by the First Amendment.[126] Moreover, this speech occurred only after Officer Fulton pushed him without justification and incorrectly told him that he could not use profane language in public.[127] Mr. Johnson argues that this conduct does not amount to disorderly conduct, and consequently there was no arguable probable cause to arrest him.

The Court concludes that, when construing the evidence in the light most favorable to the Plaintiffs, Officer Fulton and Officer Bowe did not have arguable probable cause to arrest Mr. Johnson for disorderly conduct. Based on the way Georgia courts construe Georgia's disorderly conduct statute, an officer could not reasonably believe probable cause existed to arrest Mr. Johnson for this offense. A genuine dispute of material fact exists as to the facts surrounding Mr. Johnson's arrest, including the statements that he made

---

[125]   Defs.' Mot. for Summ. J., at 15-16.

[126]   *Id.* at 16.

[127]   *Id.*

and the manner in which he conducted himself. A jury could reasonably conclude that Officer Fulton and Officer Bowe arrested Mr. Johnson for making a profane statement, objecting to Officer Fulton's conduct, ignoring Officer Fulton's commands to stop using profanity, belittling them, and calling them "motherfuckers." Since Officer Fulton and Officer Bowe lacked arguable probable cause, they are not entitled to qualified immunity as to Mr. Johnson's Fourth Amendment false arrest claim.

First, an officer could not reasonably believe that probable cause existed to arrest Mr. Johnson under O.C.G.A. § 16–11–39(a)(1). A person acts in a "tumultuous" manner when he or she "acts in a disorderly, turbulent, or uproarious manner toward another person, which places the other person in reasonable fear for his or her safety."[128] The Supreme Court of Georgia has explained that this statute "on its face contains no prohibition against any particular message being communicated, and it makes clear that the level of 'tumultuous' behavior necessary to give rise to a sustainable charge must involve *acts* that would place another person in reasonable fear for his or her safety." [129] "[T]o the extent that there are tumultuous acts that would ostensibly support a disorderly conduct charge under OCGA § 16–11–39(a)(1) and that could also constitute or involve an expressive act, the expression at

---

[128]    *Freeman v. State*, 302 Ga. 181, 183 (2017).

[129]    *Id.* (emphasis in original).

24

issue would still have to be of the kind that would place a person in reasonable fear for his or her 'life, limb, or health' before a defendant could be found guilty of disorderly conduct under OCGA § 16–11–39(a)(1)."[130] Expressive conduct that gives rise to such a reasonable fear is not constitutionally protected, but instead constitutes "fighting words."[131] For example, silently raising a middle finger from the back of a church during a church service does not constitute "fighting words" or a "true threat" amounting to a tumultuous act within the parameters of § 16-11-39(a)(1).[132] The Georgia Supreme Court has explained that the "[r]elevant circumstances for consideration include whether 'the person using the offensive language did so in a face-to-face confrontation with the officer, and [whether] the opprobrious words amounted to . . . more than a one-word insult.'"[133]

Mr. Johnson's conduct, under his version of the facts, would not place a person in reasonable fear for his or her "life, limb, or health." Mr. Johnson approached the officers to ask what was happening with the Chambers, but stayed eight feet away from them. There was not a large crowd – Mr. Johnson

---

[130] *Id.* at 185.

[131] *Id.* (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942)).

[132] *Id.* at 186-87.

[133] *Hill v. Mull*, No. 5:04-CV-329 (DF), 2006 WL 3022280, at *6 (M.D. Ga. Oct. 23, 2006) (alterations in original).

25

testified that there were ten people outside at this time, including the officers, the Johnsons, and the Chambers.[134] Officer Fulton walked up to Mr. Johnson, pushed him, and then told him to leave. Mr. Johnson then complained about Officer Fulton's conduct and made a profane statement. Officer Fulton told him he could not use profanity in public, and Mr. Johnson responded, using profanity, that there is "freedom of speech." Mr. Johnson was then arrested. His conduct would not place a person in reasonable fear for his or her life, limb or health, and does not constitute "fighting words" or a "true threat." His profane statement is more akin to raising a middle finger in *Freeman*. Even if his statements were distasteful, this does not rise to the level of placing others in reasonable fear of injury. Because of this, a reasonable officer under these circumstances would not believe that probable cause existed to arrest Mr. Johnson for disorderly conduct under § 16-11-39(a)(1).

Similarly, Mr. Johnson's conduct would not violate § 16-11-39(a)(3). This subsection focuses more so on language used by an individual. This subsection provides that a person commits the offense of disorderly conduct when he or she:

> without provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke

---

[134]     Andre Johnson Dep. at 107 [Doc. 47-2].

violent resentment, that is, words commonly called "fighting words."[135]

When considering this statute in the context of offensive language, courts "must examine not only the words used but also 'the circumstances and context in which they were said.'"[136] This context is important in determining whether such words have a direct tendency to cause acts of violence by others.[137] Furthermore, offensive language found to constitute fighting words within the meaning of this statute normally occur in the context of a face-to-face confrontation with another individual.[138]

For example, in *Bolden v. State*, the Georgia Court of Appeals upheld a conviction for disorderly conduct where the defendant directed a series of profane insults at an officer, including calling him a "son of a bitch," a "mother fucker," a "pig," a "motherfucking pig," and a "bastard."[139] These insults were made in the officer's immediate presence, and in front of a potentially hostile

---

[135]     O.C.G.A. § 16-11-39(a)(3).

[136]     *Turner v. State*, 274 Ga. App. 731, 732 (2005) (quoting *Lundgren v. State*, 238 Ga. App. 425, 427 (1999)).

[137]     *Knowles v. State*, 340 Ga. App. 274, 278 (2017) (quoting *Tucker v. State*, 233 Ga. App. 314, 317 (1998)).

[138]     *See Turner*, 274 Ga. App. at 732 ("In each of the cases cited by the dissent, the person using the offensive language did so in a face-to-face confrontation with the officer . . . .").

[139]     *Bolden v. State*, 148 Ga. App. 315 (1978).

crowd.[140] In similar cases where convictions were upheld, the language used is significantly more offensive and directed at another person in a threatening manner that would likely provoke an immediate breach of the peace.[141] In contrast, in *Knowles v. State*, the defendant was convicted of disorderly conduct for yelling and cursing at a police officer, including referencing his "damn ID" and saying "fuck you" to the officer.[142] The defendant did not engage in any non-verbal aggressive behavior toward the officer.[143] The court concluded that the defendant's acts of raising his voice and cursing at a police officer during a traffic stop, while disrespectful and vulgar, were not fighting words within the meaning of § 16-11-39(a)(3). Similarly, in *Turner v. State*, the Georgia Court of Appeals reversed a defendant's conviction under § 16-11-39(a)(3).[144] There, the defendant yelled "you bastards" as he drove by a police officer who had stopped another vehicle.[145] The court concluded that the defendant's "name-calling while driving by" was not "so opprobrious or

---

[140]    *Id.*

[141]    *See Turner*, 274 Ga. App. at 733 (distinguishing cases where "the language used was substantially more offensive and was directed to the officer's face in a threatening way, and would therefore tend to provoke either an immediate breach of the peace or a call for additional support").

[142]    *Knowles*, 340 Ga. App. at 281.

[143]    *Id.* at 281.

[144]    *Turner*, 274 Ga. App. at 733.

[145]    *Id.* at 731.

28

inherently abusive" as to amount to fighting words. This was especially true given the fact that the defendant yelled only a single offensive word, and was not engaged in a face-to-face confrontation.[146] Even though the language was "rude and disrespectful," it "simply d[id] not rise to the level of criminal conduct that would constitute 'fighting words.'"[147]

For similar reasons, a reasonable officer could not conclude that Mr. Johnson's conduct violated § 16-11-39(a)(3). Mr. Johnson made two profane statements. First, he stated that it was "bullshit" that Officer Fulton pushed him and told him to leave.[148] Then, after he was ordered not to curse again, Mr. Johnson said "I can say whatever I want to say. It's called freedom of speech, motherfucker." [149] These two profane statements are much more similar to the language used in *Turner* and *Knowles* than the string of insults used in *Bolden.* His conduct did not include a string of insults made in a hostile manner in the immediate presence of the officers, but instead included two short statements made in frustration as he walked away. The language that Mr. Johnson used was not so opprobrious or inherently abusive that it threatened an immediate breach of the peace and thus constituted fighting

---

[146]     *Id.* at 732.

[147]     *Id.* at 733.

[148]     Pls.' Statement of Material Facts ¶ 40.

[149]     *Id.* ¶¶ 41-42.

29

words. This is especially true given the fact that he made one statement while he was eight feet away from the officers, and then made the other statement when he twenty feet away from the officers and was walking away from the scene. It was not a face-to-face confrontation. Furthermore, unlike in *Bolden*, the profane insults were not made in the presence of a large, potentially hostile crowd. A reasonable officer would not conclude that his language constituted "fighting words" within the meaning of § 16-11-39(a)(3). Even if Mr. Johnson's language was crude, it is constitutionally protected. Therefore, under Mr. Johnson's account of the facts, which the Court must accept at this stage, Officer Fulton and Officer Bowe arrested him without actual or arguable probable cause.[150] Since they lacked both arguable and actual probable cause to arrest Mr. Johnson for obstruction, and since making an arrest without probable cause is a clearly-established violation of the Fourth Amendment, Officer Fulton and Officer Bowe are not entitled to qualified immunity. Therefore, the Defendants are not entitled to summary judgment as to Mr. Johnson's false arrest claim.

The Defendants also argue that the Plaintiffs have failed to provide evidence that Officer Bowe was sufficiently involved in Mr. Johnson's arrest to be subjected to liability under § 1983. The Eleventh Circuit has held that "where an officer was present during an arrest and knew that the arresting

---

[150] *Skop*, 485 F.3d at 1143.

officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved."[151] In contrast to excessive force cases, where the Eleventh Circuit has recognized a duty to intervene by non-participant officers, the liability of present, non-arresting officers in the context of false arrest cases depends on "both the degree of participation in the arrest and the amount of information available to the non-arresting officer, because a non-arresting officer does not have a duty to investigate the basis of another officer's arrest."[152] An officer must have "the requisite information to put him on notice that an unlawful arrest was occurring or had occurred."[153] For example, the Eleventh Circuit concluded that a non-arresting officer was sufficiently involved "where he participated in an interview resulting in an allegedly fabricated confession, took notes from which the police report was prepared, and transported the detainee to the jail."[154]

Here, the Plaintiffs have offered enough evidence from which a jury could conclude that Officer Bowe was sufficiently involved in Mr. Johnson's

---

[151] *Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013) (citing *Jones v. Cannon*, 174 F.3d 1271, 1283-84 (11th Cir. 1999)).

[152] *Id.* at 980 (citing *Jones*, 174 F.3d at 1284-86).

[153] *Id.* at 980.

[154] *Id.* at 979 (citing *Jones*, 174 F.3d at 1284).

arrest to be subjected to § 1983 liability. The Plaintiffs have provided evidence

that Officer Bowe participated in Mr. Johnson's arrest by running up to him

with Officer Fulton after Mr. Johnson cursed at them and helping Officer

Fulton physically seize him.[155] The Plaintiffs also provide evidence that Mr.

Johnson was detained in Officer Bowe's police car and was arrested using

Officer Bowe's handcuffs.[156] Officer Bowe was also present at the scene for

most of the incident, and observed Mr. Johnson's conduct that resulted in his

arrest. From this evidence, a jury could reasonably conclude that Officer Bowe

was sufficiently involved in Mr. Johnson's arrest to impose liability under §

1983.

### 2. Retaliatory Arrest

The Defendants next move for summary judgment as to the Johnsons'

retaliatory arrest claims under the First Amendment.[157] In Counts I and II,

the Johnsons each allege that they were arrested in retaliation for engaging in

constitutionally protected speech in violation of the First and Fourteenth

Amendments. They also allege that Officer Fulton and Officer Bowe lacked

probable cause to arrest them because these statements did not amount to

---

[155]    Pls.' Statement of Material Facts ¶ 43.

[156]    *Id.* ¶ 47.

[157]    Defs.' Mot. for Summ. J., at 12.

fighting words or otherwise meet the elements of § 16-11-39. [158] The Defendants argue in response that both Johnsons were arrested for their conduct, and not just their words, and that this conduct violated Georgia law. The Court addresses each of these in turn.

### i. Diane Johnson

First, the Defendants move for summary judgment as to Ms. Johnson's retaliatory arrest claim. In Count I, Ms. Johnson argues that she was falsely arrested in retaliation for statements she made to Officer Fulton, her attempts to film the officers, and her association with Mr. Johnson and the Chambers. She argues that her obstruction arrest was predicated upon conduct that is protected under the First Amendment.[159] "To state a claim for retaliation for exercising their First Amendment rights a plaintiff must establish that: (1) the speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection existed between the retaliatory conduct and the adverse effect on speech."[160] "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right . . . .'"[161] "[A]s a general

---

[158]   *Id.*

[159]   Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 11.

[160]   *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006).

[161]   *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ."[162] In contrast to Ms. Johnson's Fourth Amendment claim, Officer Fulton's motive is relevant to her claim that Officer Fulton arrested her in retaliation for her exercise of her First Amendment rights.[163]

The Court must first determine whether Officer Fulton has qualified immunity as to this claim.[164] Officials are entitled to qualified immunity from First Amendment retaliation claims if they have arguable probable cause to make an arrest.[165] Thus, arguable probable cause for an arrest precludes a First Amendment retaliation claim.[166] As noted above, arguable probable cause exists if reasonable officers in the same circumstances, possessing the same knowledge, could have believed that probable cause existed to arrest.[167]

---

[162]    *Id.*

[163]    *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (11th Cir. 2011).

[164]    *See Vassilev v. City of Johns Creek*, No. 1:14-CV-0312-LMM, 2015 WL 12591737, at *8 (N.D. Ga. Sept. 29, 2015) ("[B]efore analyzing the elements of retaliatory arrest and prosecution, the Court must first decide if he has qualified immunity.").

[165]    *Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold that the officers had arguable probable cause to arrest Anderson for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

[166]    *Id.*

[167]    *Skop v. City of Atlanta, Ga*, 485 F.3d 1130, 1137 (11th Cir. 2007).

The Defendants argue that she was arrested due to her conduct, and not her words.[168] Nonetheless, as explained above, when taking the facts in the light most favorable to the Plaintiffs, Officer Fulton lacked even arguable probable cause to arrest Ms. Johnson for obstruction. However, the analysis does not end there. Under the qualified immunity analysis, Ms. Johnson still bears the burden of showing that her First Amendment rights were violated, and that such rights were clearly established.[169]

First, Ms. Johnson must show that her speech was constitutionally protected.[170] The Defendants argue that Ms. Johnson was not arrested because of her speech.[171] Instead, according to the Defendants, Ms. Johnson was arrested because of her conduct. This conduct included her repeated inquiries for Officer Fulton's name, which interrupted and obstructed his investigation.[172] This is essentially a recasting of their argument that probable cause to arrest existed. The Defendants do not explain how her repeated requests for Officer Fulton's name amounted to obstruction, and do

---

[168]    Defs.' Mot. for Summ. J., at 12.

[169]    *See Vassilev*, 2015 WL 12591737, at *8 ("[U]nder qualified immunity, Plaintiff still bears the burden to show his First Amendment rights were violated and that the violation was clearly established.").

[170]    *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

[171]    Defs.' Mot. for Summ. J., at 12.

[172]    *Id.* at 12-13.

35

not cite any case law in support of this argument. Essentially, they argue that her questions interrupted Officer Fulton as he spoke with the Chambers, and that this constitutes obstruction.

However, the Johnsons dispute each of these facts.[173] They dispute the timing of Ms. Johnson's questions,[174] dispute that she interrupted Officer Fulton,[175] and dispute the assertion that she approached the officers after she was ordered to remain near the wall.[176] Instead, they contend that Ms. Johnson initially approached Officer Fulton and the Chambers to ask what had happened.[177] She then went to her car to retrieve her phone so that she could record the incident.[178] Ms. Johnson then returned, and asked Officer Fulton for his name while she attempted to film him.[179] She did not interrupt him.[180] Officer Fulton, who was visibly irritated, then approached her.[181] Ms. Johnson

---

[173]    Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 9-10.

[174]    Pls.' Statement of Material Facts ¶¶ 17, 22.

[175]    Pls.' Response to Defs.' Statement of Material Facts ¶ 18.

[176]    *Id.* ¶¶ 30-32.

[177]    Pls.' Statement of Material Facts ¶ 8.

[178]    *Id.* ¶ 12.

[179]    *Id.* ¶ 17.

[180]    *Id.*

[181]    *Id.* ¶¶ 22-23.

36

asked for his name, and he refused.[182] He then knocked her phone out of her hand.[183] Ms. Johnson then said "Is that what we're doing? We're knocking people's phone out of their hands for asking [for a] name?"[184] As she picked up her phone, Officer Fulton ordered her to "get off his scene" and move to the front wall of the restaurant.[185] While standing at the wall, Ms. Johnson held her phone up again and asked Officer Fulton for his name.[186] Officer Fulton said "that's it" and arrested Ms. Johnson.[187]

Under this version of the facts, Ms. Johnson engaged in constitutionally protected speech. "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech."[188] "[T]he First Amendment . . . 'protects a significant amount of verbal criticism and challenge directed at police officers.'"[189] "The

---

[182]  *Id.* ¶¶ 22, 24.

[183]  *Id.* ¶ 25.

[184]  *Id.* ¶ 27.

[185]  *Id.* ¶¶ 28-29.

[186]  *Id.* ¶ 30.

[187]  *Id.* ¶ 31.

[188]  *See Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972) (internal quotations omitted).

[189]  *Skop v. City of Atlanta, Ga*, 485 F.3d 1130, 1139 (11th Cir. 2007) (quoting *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461-463 (1987)).

freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."[190] The Eleventh Circuit has held that "a citizen [cannot] be precluded by the threat of arrest from asking to speak to an officer's superior or from asking for an officer's badge number."[191] It also noted that such inquiries do not constitute either obstruction of justice or disorderly conduct.[192] Similarly, Ms. Johnson cannot be precluded by an arrest from asking for Officer Fulton's name, absent other conduct that would amount to obstruction. These questions, at most, constituted criticism and challenge of Officer Fulton's police work. Therefore, Ms. Johnson's conduct was protected by the First Amendment.

Second, Ms. Johnson must show that Officer Fulton's retaliatory

---

[190] *Hill*, 482 U.S. at 462-463.

[191] *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006).

[192] *Id.*; *see also Andrews v. Scott*, 729 F. App'x 804, 811 (11th Cir. 2018) (citing *Hill*, 482 U.S. at 461) ("Andrews alleges that she engaged in the following speech: (1) she 'advised [Officer Marshall] that she had certain privacy guarantees protected under the U.S. Constitution'; and (2) she told Marshall she was not required to provide identification as a passenger in O'Bryant's truck. When Andrews engaged in this speech, she was not obstructing Officer Marshall from carrying out the traffic stop: she knew that O'Bryant had already given Marshall her name, and that Marshall had already run background checks on her and O'Bryant. Rather, her assertion of her right to privacy was a criticism and challenge of Officer Marshall's action, and, as such, is protected speech.").

conduct "adversely affected the protected speech."[193] "[P]rivate citizens must establish that the retaliatory acts would deter a person of ordinary firmness from exercising his or her First Amendment rights."[194] This is an objective standard and a factual inquiry.[195] It is "obvious" that when Ms. Johnson was arrested, her protected speech was adversely affected.[196] An arrest for engaging in protected speech would certainly deter a person of ordinary firmness from exercising his or her First Amendment rights. "Indeed, even the threat of arrest would likely deter a person of ordinary firmness from the exercise of First Amendment rights, at least to some degree."[197] Furthermore, a law enforcement officer's act of physically knocking a smart phone to the ground would likely deter a person of ordinary firmness from exercising his or her First Amendment right to record the police. Thus, Ms. Johnson easily provides sufficient evidence as to the second prong of her retaliation claim.

Third, Ms. Johnson must show that there is a causal connection between the retaliatory actions and the adverse effect on speech.[198] This inquiry asks

---

[193]   *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

[194]   *Id.* at 1252.

[195]   *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008).

[196]   *Andrews*, 729 F. App'x at 812.

[197]   *Id.* (citing *Bennett*, 423 F.3d at 1254-55).

[198]   *Bennett*, 423 F.3d at 1250.

whether Officer Fulton was "subjectively motivated" to arrest Ms. Johnson because of her protected speech.[199] Her protected speech must be the "but-for" cause of her arrest.[200] She must show that the arresting officer "would not have made the arrest" if she had not engaged in protected speech.[201] This inquiry asks whether the protected speech is the "motivating factor" behind a defendant's adverse actions.[202] A reasonable jury could find that Ms. Johnson's protected speech was the motivating factor behind her arrest. She provides evidence that Officer Fulton was visibly irritated at her requests for his name, that he knocked her phone out of her hand while she was attempting to film him, and that he ultimately decided to arrest her after she once again asked for his name. This evidence is sufficient to support a finding that the protected speech was the motivating factor in her arrest. Moreover, the absence of probable cause supports this conclusion.[203] "Demonstrating a lack of probable cause will tend to reinforce the retaliation evidence and show that

---

[199]    *Smith*, 532 F.3d at 1278.

[200]    *See Vassilev v. City of Johns Creek*, No. 1:14-CV-0312-LMM, 2015 WL 12591737, at *9 (N.D. Ga. Sept. 29, 2015) (citing *Hartman v. Moore*, 547 U.S. 250, 261 (2006)).

[201]    *Id.*

[202]    *Smith*, 532 F.3d at 1278 ("Whether a reasonable jury could find that Smith's grievances were the motivating factor behind the defendants' actions is a close question.").

[203]    *Rehberg v. Paulk*, 611 F.3d 828, 849 (11th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 261 (2006)).

40

retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that the prosecution would have occurred even without a retaliatory motive."[204] Thus, Ms. Johnson has provided sufficient evidence to establish a First Amendment retaliation claim.

Finally, Ms. Johnson's right to be free from a retaliatory arrest was clearly established at the time of this constitutional violation. "It has long been clearly established that an officer cannot arrest a citizen for constitutionally protected speech such as verbal sparring."[205] Both the Eleventh Circuit and the Supreme Court "have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights."[206] The law was clearly established at the time of Officer Fulton's alleged actions that retaliation against private citizens for exercising their First Amendment rights violated the Constitution.[207] Thus, Officer Fulton was on notice, and had fair warning, that such conduct could lead to liability under § 1983.[208] For these reasons, a reasonable jury could find that Officer Fulton

---

[204]     *Hartman*, 547 U.S. at 251.

[205]     *Vassilev*, 2015 WL 12591737, at *9.

[206]     *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005).

[207]     *See Carr v. Cadeau*, 658 F. App'x 485, 489 (11th Cir. 2016).

[208]     *Bennett*, 423 F.3d at 1256.

violated Ms. Johnson's clearly-established constitutional rights, and he consequently is not entitled to qualified immunity.[209]

Ms. Johnson also argues that, independent of her arrest, Officer Fulton violated her First Amendment rights by slapping the phone out of her hand as she tried to film him. The Eleventh Circuit has recognized "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."[210] "The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."[211] For example, in *Bowens v. Superintendent of Miami South Beach Police Department,* the Eleventh Circuit held that a photojournalist, who had been filming an arrest from two blocks away, properly stated a claim under the First Amendment.[212] The photojournalist alleged that the officers seized his camera, damaged it,

---

[209]     *See Carr*, 658 F. App'x at 489 (concluding that an officer who "chased" the plaintiffs into their garage and "arrested them in retaliation" for their protected speech violated the plaintiffs' clearly-established First Amendment rights).

[210]     *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *see also Bowens v. Superintendent of Miami S. Beach Police Dep't,* 557 F. App'x 857, 863 (11th Cir. 2014) ("[A] member of the press plausibly states a First Amendment violation by alleging he was arrested for taking photographs of alleged police misconduct and police then deleted the photographs he took.").

[211]     *Smith*, 212 F.3d at 1333.

[212]     *Bowens*, 557 F. App'x at 863.

42

arrested him, and erased the photographs he had taken.[213] Similarly, Ms. Johnson had a First Amendment interest in filming Officer Fulton in the performance of his official duties. Under the Plaintiffs' version of the facts, Officer Fulton violated this right by knocking the phone out of her hand as she attempted to film the encounter. This right was also clearly-established at the time of this violation.[214]

### ii. Andre Johnson

The Defendants also move for summary judgment as to Mr. Johnson's retaliatory arrest claim. However, it is unclear whether the Defendants specifically address Mr. Johnson's retaliation claim. Instead, they seem to address his claims generally, arguing that he was arrested due to his conduct, and not his words.[215] However, as explained above, Officer Fulton and Officer Bowe lacked both actual and arguable probable cause to arrest Mr. Johnson for disorderly conduct.[216] Under the Plaintiffs' version of the facts, Mr.

---

[213]    *Id.* at 859.

[214]    *See Smith*, 212 F.3d at 1333 (declaring a right to record police conduct, subject to reasonable time, place, and manner restrictions).

[215]    Defs.' Mot. for Summ. J., at 14-17.

[216]    The Plaintiffs argue that the Supreme Court's recent decision in *Lozman v. City of Riviera Beach, Fla.* abrogated *Redd v. City of Enterprise.* See Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 11-12. In *Redd*, the Eleventh Circuit held that arguable probable cause entitles an officer to qualified immunity to retaliatory arrest claims. *See Redd v. City of Enter.*, 140 F.3d 1378, 1384 (11th Cir. 1998). In *Lozman*, the Supreme Court considered the "narrow" issue of whether the existence of probable cause bars a First

Johnson merely questioned Officer Fulton's conduct, made two profane statements, asserted his rights under the First Amendment, and did not physically resist or threaten him.

Thus, like Ms. Johnson, Mr. Johnson has provided sufficient evidence to establish a First Amendment retaliation claim. "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." [217] One of these narrowly limited classes of speech is "fighting words." Fighting words are words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." [218] As explained above, Mr. Johnson's statements do not constitute fighting words because they are not the type of speech that tends to incite an immediate breach of the peace. Although arguably vulgar or offensive, these

---

Amendment retaliation claim. *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1951 (2018). The Supreme Court concluded that, in the very specific context of that case, the existence of probable cause did not bar the plaintiff's First Amendment retaliation claim. *Id.* at 1954-55. It explained that this case was "far afield from the typical retaliatory arrest claim," and that a determination of whether the existence of probable cause generally precludes a retaliation claim "must await a different case." *Id.* However, since Officer Fulton lacked arguable probable cause to arrest Mr. Johnson, the Court need not determine whether *Lozman* abrogated *Redd.*

[217]    *See Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972) (internal quotations omitted).

[218]    *Chaplinksy v. New Hampshire*, 315 U.S. 568, 572 (1942).

44

words are nonetheless protected by the First and Fourteenth Amendments.[219] Furthermore, his criticisms of Officer Fulton's conduct, and his disagreement as to whether Officer Fulton can forbid him from cursing, are likewise constitutionally protected.[220] Thus, he has provided evidence that he engaged in protected speech by questioning Officer Fulton's demeanor, that his arrest adversely affected his First Amendment protections, and that his protected speech was the motivating factor in his arrest.[221] Furthermore, as explained above, Mr. Johnson's right to be free from retaliatory arrests was clearly-established at the time of this purported violation. Therefore, the Defendants are not entitled to summary judgment as to this claim.

### 3. Malicious Prosecution

Next, the Defendants move for summary judgment as to the Plaintiffs' claims for malicious prosecution. The Eleventh Circuit has recognized malicious prosecution as a violation of the Fourth Amendment and a cognizable constitutional tort under § 1983.[222] The elements of a malicious

---

[219]    *See Gooding*, 405 U.S. at 520.

[220]    *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

[221]    Pls.' Statement of Material Facts ¶¶ 31, 34.

[222]    *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).

prosecution claim are drawn from both federal law and state law.[223] "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."[224] The elements of a common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[225] The Defendants argue that these claims fail because probable cause existed to arrest the Johnsons, and because the Johnsons have failed to show that Officer Fulton and Officer Bowe acted with malice.[226]

First, the Defendants argue that the Plaintiffs' malicious prosecution

---

[223]    *Williams v. Scott*, 682 F. App'x 865, 867 (11th Cir. 2017).

[224]    *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

[225]    *Id.* at 882.

[226]    The Defendants do not address any other elements of a malicious prosecution claim, including whether the officers initiated the prosecutions, and whether the prosecutions terminated in the Johnsons' favor. In fact, it appears questionable to the Court that these prosecutions terminated in favor of the Johnsons. Nonetheless, the Defendants' failure to raise these arguments in their briefs means that the arguments have been abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

46

claims fail because probable cause to arrest them existed.[227] However, as explained above, when construing the facts in the Plaintiffs' favor, Officer Fulton lacked even arguable probable cause to arrest Ms. Johnson for obstruction. Similarly, Officer Fulton and Officer Bowe lacked arguable probable cause to arrest Mr. Johnson for disorderly conduct. Therefore, they certainly lacked probable cause to arrest them for these offenses. The Defendants also argue that "a judge agreed when he signed [Ms. Johnson's] arrest warrant" that probable cause existed to arrest her.[228] However, the Defendants have not provided any authority showing that this is relevant to the probable cause determination. And, as explained in more detail below, under the Plaintiffs' version of the facts Officer Fulton provided false information in support of his application for arrest warrants. Thus, the fact that a judge believed that probable cause existed based upon this false information does mean that probable cause actually existed in the context of the true facts.

The Defendants then argue that malicious prosecution claims are disfavored under Georgia law.[229] While it is true that Georgia law disfavors

---

[227]    Defs.' Mot. for Summ. J., at 13-14, 16-17.

[228]    *Id.* at 14.

[229]    *Id.*

malicious prosecution causes of action,[230] section 1983 claims, on the other hand, are not disfavored.[231] "Rather, it was designed to provide a broad remedy for violations of federally protected civil rights such as those secured by the Fourth Amendment—including the right against unlawful seizure as embodied in a malicious-prosecution claim."[232] This distinction reflects the fact that, while malicious prosecution claims under § 1983 are guided in part by state law, "a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law."[233] Thus, contrary to the Defendants' assertion, Fourth Amendment malicious prosecution claims under § 1983 are not disfavored.

Finally, the Defendants argue that the Plaintiffs have failed to show that the officers acted with malice.[234] Once again, the Defendants do not cite any authority in support of their argument. Instead, they merely assert the threadbare argument that Officer Fulton and Officer Bowe acted without malice. The Johnsons argue that they have established the malice element

---

[230] *See Monroe v. Sigler*, 256 Ga. 759, 761 (1987).

[231] *Blue*, 901 F.3d at 1359.

[232] *Id.* at 1359-60.

[233] *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003).

[234] Defs.' Mot. for Summ. J., at 13-14, 16-17.

48

because they have provided evidence that Officer Fulton supplied false information to the magistrate who issued the arrest warrants. "A police officer who applies for an arrest warrant can be liable for malicious prosecution if he should have known that his application failed to establish probable cause or if he made statements or omissions in his application that were material and perjurious or recklessly false."[235]

For example, in *Kelly v. Curtis*, the Eleventh Circuit held that a genuine dispute of fact precluding summary judgment existed as to the element of malice.[236] In *Kelly*, an officer obtained an arrest warrant based on her sworn statement that the plaintiff had committed the offense of cocaine possession.[237] However, when construing the facts in the plaintiff's favor, the officer "knew that the substance Kelly had possessed was not cocaine" because the officer knew of the contents of a lab report that showed otherwise.[238] Thus, the officer violated the plaintiff's clearly established constitutional right by seeking a warrant on the basis of perjured testimony. In contrast to mistakenly including facts in a warrant affidavit that turn out to be incorrect, an officer can be liable under a § 1983 malicious prosecution claim when they put forth information in

---

[235]    *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016).

[236]    *Kelly v. Curtis*, 21 F.3d 1544, 1554-55 (11th Cir. 1994).

[237]    *Id.* at 1554.

[238]    *Id.* at 1554.

49

a warrant affidavit that was "not believed or appropriately accepted by the affiant as true."[239]

Similarly, the Johnsons have produced evidence from which a jury could reasonably conclude that Officer Fulton knowingly provided false information in his warrant applications. In his arrest warrant affidavit for Ms. Johnson, Officer Fulton stated, under oath, that Ms. Johnson "committed the offense of obstruction by continuously invading my private space, walking directly behind me while holding her cell phone near my head as I attempted to handcuff Mr. Andre Johnson and by ignoring my lawful order which instructed her to leave the scene and to record with her cell phone from a distance."[240] In his arrest warrant affidavit for Mr. Johnson, Officer Fulton stated that Mr. Johnson acted in a "violent and tumultuous manner" toward him which "placed [him] in reasonable fear of [his] safety by refusing to leave the scene and by stating in a loud and boisterous manner which caused nearby patrons to take notice 'man this some bullshit, Yall some bitches, It's called freedom of speech motherfuckers.'"[241]

However, the Johnsons dispute these assertions. They have offered testimony that Ms. Johnson did not invade Officer Fulton's private space, did

---

[239]    *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 165-66 (1978)).

[240]    *See* [Doc. 46-5].

[241]    *See* [Doc. 46-6].

50

not interrupt his investigation, and immediately complied with his order to leave the scene and stand by the wall of the building.[242]  They have also offered testimony that Mr. Johnson stayed at least eight feet away from Officer Fulton, that he was not hostile, and that there was no large crowd of patrons around them, and that he immediately began to leave when ordered by Officer Fulton.[243] Under their version of the facts, which the Court is obligated to accept at this stage, Officer Fulton offered an account of the events in his warrant affidavits that is extremely exaggerated, if not totally fabricated. According to the Johnsons, they were not violent or boisterous, did not take aggressive steps toward Officer Fulton, complied with his orders to leave the scene, and did not invade his personal space. Thus, Officer Fulton sought an arrest warrant on the basis of information that he could not have "believed or appropriately accepted . . . as true."[244] Given this, a reasonable jury could conclude that Officer Fulton acted with malice.

Nevertheless, Mr. Johnson's malicious prosecution claim against Officer Bowe fails. The Plaintiffs have not provided any evidence that Officer Bowe acted with malice. In fact, they provide no evidence that Officer Bowe was

---

[242]    *See* Pls.' Statement of Material Facts ¶¶ 17, 19-20, 29-31.

[243]    *See id.* ¶¶ 32-33, 35-37, 43-44; Pls.' Response to Defs.' Statement of Material Facts ¶¶ 25, 28-29.

[244]    *Kelly*, 21 F.3d at 1555.

involved in the criminal prosecution of Mr. Johnson outside of the initial false arrest. There is no evidence that he was involved in seeking the arrest warrant against Mr. Johnson, or that, if he did, he did so with malice. The Plaintiffs provide no evidence as to Officer Bowe's involvement outside of the act of arresting Mr. Johnson outside of Bigelow's. For this reason, Mr. Johnson's malicious prosecution claim against Officer Bowe fails as a matter of law.

The Plaintiffs also argue that "malice" is not a necessary element of a malicious prosecution claim under § 1983, and that the officers' subjective states of mind should not bear on this analysis.[245] Instead, according to the Plaintiffs, Fourth Amendment claims are governed solely by an objective, reasonableness standard.[246] However, this argument conflates the elements of a claim for unreasonable seizure in violation of the Fourth Amendment, and the elements of a common law malicious prosecution claim. To succeed on a malicious prosecution claim under § 1983, a plaintiff must show both a violation of the Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution. Although the Fourth Amendment inquiry may be governed by an objective, reasonableness standard, this does not mean that the additional common law elements are also governed by that objective standard. Instead,

---

[245]    Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 19-20.

[246]    *Id.*

52

those elements require a showing of malice, which contains a subjective element. Nonetheless, since the Johnsons have provided adequate evidence as to malice with regard to Officer Fulton, he is not entitled to summary judgment as to these claims.

### 4. State Law Claims

Next, the Defendants move for summary judgment as to the Plaintiffs' state law claims against Officer Fulton and Officer Bowe. In Counts III and IV, the Johnsons allege claims for false imprisonment, false arrest, malicious prosecution, and battery under Georgia law.[247] The Defendants argue that the Plaintiffs' claims against Officer Fulton and Officer Bowe in their individual capacities are barred by official immunity. Official immunity under Georgia law provides public officers and employees limited protection from suit in their personal capacity.[248] It "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption."[249] "Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an

---

[247] *See* Compl. ¶¶ 87-96.

[248] *Cameron v. Lang*, 274 Ga. 122, 123 (2001).

[249] *Id.* (internal quotations omitted).

intent to injure."[250] Similar to qualified immunity under federal law, the reasoning behind this immunity is to "preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight."[251] Actual malice requires a deliberate intention to do wrong.[252] It does not include implied malice, "or the reckless disregard for the rights and safety of others."[253] "Actual intent to cause injury" means an actual intent to cause harm to the plaintiff, and not merely an intent to do the act causing the purported injury.[254] This includes "perhaps a wicked or evil motive."[255]

The Defendants argue that Officer Fulton and Officer Bowe "arrested Plaintiffs because they witnessed conduct that they reasonably believed to violate laws."[256] Furthermore, the Defendants argue that the Johnsons have not sufficiently shown negligent or malicious conduct by Officer Fulton and Officer Bowe to deprive them of official immunity. However, as described above

---

[250]    *Id.*

[251]    *Id.*

[252]    *Selvy v. Morrison*, 292 Ga. App. 702, 704 (2008).

[253]    *Id.*

[254]    *Kidd v. Coates*, 271 Ga. 33 (1999).

[255]    *Id.*

[256]    Defs.' Mot. for Summ. J., at 23.

with regard to the Johnsons' § 1983 claims, the officers' belief that the Johnsons violated these statutes was not reasonable. When construing inferences in the Johnsons' favor, no reasonable officer could have believed under these circumstances that their conduct constituted disorderly conduct or obstruction. Furthermore, the Johnsons have provided sufficient evidence from which a reasonable jury could conclude that Officer Fulton and Officer Bowe acted with actual malice. The Johnsons provide evidence that Officer Fulton became visibly irritated with Ms. Johnson, knocked her phone out of her hand, and arrested her in response to her final inquiry for his name.[257] They also provide evidence that he shoved Mr. Johnson without provocation, that he became upset after Mr. Johnson told him that he had no right to touch him, and that he was arrested for shouting that he could challenge Officer Fulton because of "freedom of speech, motherfucker."[258] Officer Bowe assisted in the arrest of Mr. Johnson, despite witnessing conduct that is clearly protected by the First Amendment. These facts, if true, show a wicked motive on Officer Fulton's and Officer Bowe's parts. They demonstrate that the officers arrested them in retribution for questioning their authority, and not based upon a belief that their conduct violated the law. Furthermore, under the Johnsons' version of the facts, Officer Fulton knowingly provided false information in the arrest

---

[257]    Pls.' Statement of Material Facts ¶¶ 23, 25, 29-31.

[258]    *Id.* ¶¶ 35, 37-38, 42-45.

55

warrants and in his incident reports.[259] If a jury believes the Johnsons' version of the facts, Officer Fulton knowingly obtained arrest warrants based upon false information and falsified his police reports. This is sufficient to support a finding of actual malice.[260]

The Defendants also argue that the Johnsons' battery claims should be dismissed because police officers are entitled to use some degree of physical coercion or force to effectuate an arrest.[261] "The right of law enforcement officers to conduct an investigatory detention of a suspect necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it . . . ."[262] However, "an officer may not use more force than is reasonably necessary under the circumstances."[263] "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene."[264] Under these circumstances, no reasonable officer would have believed that probable cause existed to arrest the Johnsons. Since their arrest was not warranted, then the use of force to effectuate such an arrest was also

---

[259] *Id.* ¶¶ 43-44, 46.

[260] *See Bateast v. Dekalb Cty.*, 258 Ga. App. 131 (2002).

[261] Defs.' Mot. for Summ. J., at 24.

[262] *State v. Hall*, 339 Ga. App. 237, 243 (2016).

[263] *Id.* (internal quotations and citations omitted).

[264] *Id.* at 244 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

56

unjustified. Furthermore, even before Mr. Johnson's arrest, Officer Fulton pushed him without provocation. Such a use of force is also unjustified.

## B. DeKalb County

Next, the Defendants move for summary judgment as to Mr. Johnson's § 1983 claims against DeKalb County.[265] In Count V, Mr. Johnson asserts a claim against DeKalb County under § 1983, alleging that the County violated his rights under the First and Fourteenth Amendments. "The Supreme Court has placed strict limitations on municipal liability under section 1983."[266] A local government may not be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory.[267] Instead, a county will be liable only if the plaintiff can establish that an official custom or policy of the county was the "moving force" behind the deprivation of a constitutional right.[268] Consequently, to succeed on a section 1983 claim against a county, a plaintiff

---

[265]    In the Complaint, the Plaintiffs assert a claim for municipal liability "by Diane and Andre Johnson against DeKalb County." Compl., at 16. However, in their brief, the Plaintiffs admit that "Ms. Johnson was not arrested for disorderly conduct," and consequently they "do not oppose the dismissal" of her claim *Monell* claim. *See* Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 27 n.16. Therefore, the Court deems this claim abandoned.

[266]    *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

[267]    *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

[268]    *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Grech*, 335 F.3d at 1330.

must demonstrate that a constitutional deprivation occurred: (1) pursuant to an officially promulgated policy; (2) as the result of a decision made by an official with final policymaking authority for the county; or (3) as a result of actions taken pursuant to "custom or usage" with the force of law.[269] Proof of a single isolated incident of unconstitutional activity generally is insufficient to impose municipal liability under *Monell*.[270]

In the Complaint, Mr. Johnson alleges that DeKalb County's disorderly conduct ordinance, which constitutes an official county policy, allows the County to "routinely and customarily" interfere with the "expression of constitutionally-protected speech" through the arrest and prosecution of citizens "solely for engaging in constitutionally-protected speech."[271] The Defendants argue that Mr. Johnson's theory of municipal liability fails because he was not arrested under DeKalb County's disorderly conduct ordinance.[272] According to the Defendants, Mr. Johnson was arrested under the Georgia disorderly conduct statute, and consequently, the DeKalb County ordinance cannot be the "moving force" behind his purported constitutional violation. The

---

[269] *Monell*, 436 U.S. at 690-91.

[270] *Id.* at 694; *see also Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985).

[271] Compl. ¶ 71.

[272] Defs.' Mot. for Summ. J., at 17.

58

Court agrees. "It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation."[273] Instead, the official policy or custom must be the moving force of the constitutional violation to establish municipal liability.[274] "A plaintiff 'must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'"[275] Here, Mr. Johnson was charged with violating Georgia's disorderly conduct statute, O.C.G.A. § 16-11-39, and not with violating DeKalb County's disorderly conduct ordinance, section 16-58 of the DeKalb County Code of Ordinances.

Mr. Johnson concedes this, but nonetheless argues that a question of fact still exists as to whether the DeKalb County ordinance was the moving force behind his arrest.[276] He argues that DeKalb County's ordinance instructs its police officers that they need not comply with the First Amendment.[277] He further argues that the DeKalb County police officers involved in this case testified that they believed that the DeKalb County ordinance was co-extensive

---

[273]     *Cuesta v. School Bd. of Miami-Dade Cty.*, 285 F.3d 962, 967 (11th Cir. 2002).

[274]     *Id.*

[275]     *Id.* (quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

[276]     Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 24-26.

[277]     *Id.* at 25.

with the state statute.[278] He also stresses that Officer Fulton parroted language from the county ordinance in his arrest warrant affidavits, and that the decision to charge under the state statute or the county ordinance was "based simply on whether the officer wanted to prosecute the case in state court or in recorders court."[279]

However, this is not sufficient to show that DeKalb County's ordinance was the moving force behind Mr. Johnson's constitutional injuries. Mr. Johnson has not established the causal link between the DeKalb County ordinance and his injury.[280] He has not shown that, but for the existence of this county policy, his injuries would not have occurred.[281] Instead, even absent the purported constitutional deficiencies in DeKalb County's disorderly conduct ordinance, Mr. Johnson still would have been arrested by Officer Fulton and Officer Bowe under the Georgia statute. The fact that DeKalb County's ordinance may have played some limited role in informing these

---

[278]    *Id.* at 25-26.

[279]    *Id.* at 25.

[280]    *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("Thus, not only must there be some degree of 'fault' on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation.").

[281]    *See Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1213 (noting that the proper inquiry is if the injury would "have been avoided had the employee been trained [and supervised and disciplined] under a program that was not deficient in the identified respect[s]?").

officers' understanding of disorderly conduct is not enough to establish this causal link. This would not show that the county policy itself caused Mr. Johnson's injury. Furthermore, Officer Fulton and Officer Bowe, who arrested Mr. Johnson, did not testify that their understanding of the state statute was shaped by the county ordinance. Therefore, DeKalb County is entitled to summary judgment as to Mr. Johnson's *Monell* claim.

### C. Injunctive and Declaratory Relief

Next, the Defendants move for summary judgment as to Mr. Johnson's request for injunctive and declaratory relief.[282] In Count VI of the Complaint, the Plaintiffs ask the Court to declare DeKalb County's disorderly conduct ordinance, section 16-58 of the DeKalb County Code of Ordinances, unconstitutional and to enjoin enforcement of the ordinance.[283] The Plaintiffs seem to provide two bases for this request in the Complaint. First, they allege that this ordinance was the basis for Mr. Johnson's arrest for disorderly conduct. Second, they contend that they "frequently" visit DeKalb County and intend to continue using profane language that risks prosecution under the DeKalb County disorderly conduct ordinance. The Defendants argue that Mr.

---

[282]     Defs.' Mot. for Summ. J., at 20. The Plaintiffs also "do not oppose the dismissal" of Ms. Johnson's claim for injunctive relief. *See* Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 27 n.16. Therefore, the Court deems this claim to be abandoned.

[283]     Compl. ¶¶ 89-95.

Johnson lacks standing to seek such relief, and that the disorderly conduct ordinance does not violate the First Amendment.[284]

In order to establish standing under Article III, a plaintiff must show an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[285] "A party has standing to bring an action under the Declaratory Judgment Act if an actual controversy exists . . . which is the same as an Article III case or controversy."[286] The Supreme Court has explained that the traditional rules of standing are relaxed in the context of facial challenges under the First Amendment.[287] These relaxed rules do not require "that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."[288] This is due to a concern that free speech will be chilled even before a law is enforced.[289] A plaintiff is not forced "to choose between intentionally violating a law to gain access to

---

[284]    Defs.' Mot. for Summ. J., at 20-22.

[285]    *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

[286]    *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1373 (11th Cir. 2011) (internal quotations omitted).

[287]    *See White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

[288]    *Broadrick*, 413 U.S. at 612.

[289]    *See Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991).

judicial review and foregoing what he or she believes to be constitutionally protected activity in order to avoid criminal prosecution."[290] However, although the injury requirement is "most loosely applied" in this context, the Eleventh Circuit has "repeatedly stressed that when seeking prospective relief, an injury must be imminent."[291] "[T]he threat of prosecution under the ordinance at issue must be genuine; speculative or imaginary threats will not confer standing."[292] A plaintiff must demonstrate that she has an actual and well-founded fear that the law will be enforced against her.[293]

Mr. Johnson first argues that he has standing to challenge the DeKalb County ordinance because the ordinance informed the understanding of the state disorderly conduct statute of the officers involved in his arrest. However, as explained above, Mr. Johnson fails to establish the causal link between the county ordinance and his purported injuries. Therefore, the Court finds this argument insufficient to establish standing. Mr. Johnson then argues that he has a genuine, well-founded fear of imminent prosecution under the DeKalb

---

[290]    *White's Place*, 222 F.3d at 1329 (citing *Leverett v. City of Pinellas Park*, 775 F.2d 1536, 1538 (11th Cir. 1985)).

[291]    *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.3d 756, 760 (11th Cir. 1991)).

[292]    *White's Place*, 222 F.3d at 1329 (citing *Leverett*, 775 F.2d at 1538).

[293]    *Dermer*, 599 F.3d at 1220.

63

County disorderly conduct ordinance. He asserts that he frequently visits DeKalb County, and that he desires to engage in speech that he believes is proscribed by this ordinance. He has used, and intends to use, profanity and language that is "insulting and degrading."[294] For instance, he argues that he fears arrest for engaging in private conversation in DeKalb County, or for participating in "sports events, concerts, political rallies, and protests–all of which routinely involve loud and boisterous insults."[295]

However, this fear of future prosecution under the DeKalb County ordinance is not sufficient to establish an injury in fact. "[A] prayer for injunctive and declaratory relief requires an assessment . . . of whether the plaintiff has sufficiently shown a real and immediate threat of future harm."[296] Abstract injury is not sufficient to establish an injury in fact.[297] "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."[298] "[F]or an injury to suffice for prospective relief, it must be

---

[294]    Compl. ¶¶ 93-94.

[295]    Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 30.

[296]    *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

[297]    *Lyons*, 461 U.S. at 101.

[298]    *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

64

imminent."[299] A "perhaps" or "maybe" chance of suffering an injury in the future is not enough to establish standing.[300] Instead, this future injury must "proceed with a high degree of immediacy."[301] For example, in *Elend v. Basham*, the plaintiffs challenged the creation of "protest zones" for political protests. The Eleventh Circuit concluded that the plaintiffs lacked standing because the injury alleged was "wholly inchoate."[302] The court noted that the plaintiffs' intention to protest in the future failed "to provide any limitation on the universe of possibilities of when or where or how such a protest might occur."[303] It noted that this was in "sharp contrast" with other cases "where it was known exactly where the activists intended to demonstrate and precisely which local ordinance was invoked to stop them."[304]

Taking this binding precedent into account, Mr. Johnson's allegations are insufficient to establish standing. Mr. Johnson asserts that he frequently visits DeKalb County, that he has used, and intends to use, profane, boisterous,

---

[299]     *Elend*, 471 F.3d at 1207 (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1266-67 (11th Cir. 2003)).

[300]     *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000).

[301]     *31 Foster Children*, 329 F.3d at 1266.

[302]     *Elend*, 471 F.3d at 1209.

[303]     *Id.*

[304]     *Id.* (citing *Bischoff v. Osceola Cty.*, 222 F.3d 874 (11th Cir. 2000)).

65

insulting, and degrading language, and that he fears imminent prosecution under § 16-58. However, it is entirely conjectural that Mr. Johnson will face prosecution under § 16-58 for the use of boisterous, degrading, insulting, or profane language in the immediate future. This is underscored by the fact that *he was not prosecuted under § 16-58 in this case.* The Court cannot conclude that Mr. Johnson is likely to face prosecution in the future when he was not prosecuted by the ordinance in this very case. Furthermore, it is unclear under what circumstances Mr. Johnson would be using profane language and would face arrest and prosecution for that language. Instead, there is a "universe of possibilities of when or where or how such" an incident might occur. It is not "remotely permissible to presume future injury" from his intention to use profane language in the future in DeKalb County.[305] Therefore, the Court concludes that Mr. Johnson lacks standing to seek injunctive and declaratory relief as to § 16-58 because he fails to show a sufficient injury in fact. For this reason, the Defendants are entitled to summary judgment as to Mr. Johnson's request for injunctive and declaratory relief.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion for Summary Judgment [Doc. 42] is GRANTED in part and DENIED in part.

---

[305] *Id.*

66

SO ORDERED, this 7 day of June, 2019.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\17\Johnson\17cv2601\msjtwt.docx